**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

TERON D. JOHNSON,

Petitioner,

Case Number: 24-cv-11201
Honorable Linda V. Parker

v.

MELINDA BRAMAN,

Respondent.
_________________________________/

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS, DENYING A CERTIFICATE OF APPEALABILITY, AND GRANTING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL**

Petitioner Teron D. Johnson filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions in Genesee County Circuit Court for assault with intent to do great bodily harm, Mich. Comp. Laws § 750.84; first-degree home invasion, Mich. Comp. Laws § 750.110a(2); discharging a firearm in a dwelling, Mich. Comp. Laws § 750.234b; felon in possession of a firearm, Mich. Comp. Laws § 750.224f; felon in possession of ammunition, Mich. Comp. Laws § 750.224f(6); five counts of possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b; and carrying a concealed weapon, Mich. Comp. Laws § 750.227.

The Court finds no basis for habeas corpus relief and denies the petition. The Court also denies a certificate of appealability. The Court grants Johnson leave to proceed *in forma pauperis* on appeal.

## I. Background

Johnson's convictions arise from two incidents involving his former girlfriend, Nicole Watson, that occurred two days apart. Johnson and Watson had been in a relationship for approximately twelve years and had two children together.

On December 3, 2018, Johnson went to Watson's home after receiving a call from their children's school concerning the children's behavior. Johnson testified that when he arrived at the home, Watson was using cocaine and that, while he was outside, a car carrying several people arrived. According to Johnson, one of the men displayed a gun, causing him to run away, after which he heard gunshots. He testified that he did not contact police because he feared the men. Watson, however, testified that Johnson entered her home, refused to leave when asked, and fired a gun at Michael Mack, who was also present. Mack was shot in the arm before jumping through a closed, glass window.

Mack refused to testify at trial and was declared unavailable. His preliminary examination testimony was read to the jury. Although the court held Mack in contempt for refusing to testify, the record did not establish why he

refused. During closing argument, the prosecutor suggested that Mack refused to testify because he was afraid.

Watson testified that she next saw Johnson on December 5, 2018. She accused him of kidnapping and torturing her in an abandoned house, but the jury ultimately acquitted Johnson of the charges based on those allegations. Watson admitted that she had lied about certain details, including the abandoned house and the color of Johnson's alleged gun. Johnson admitted that he and Watson purchased cocaine, and that he hit her after she struck him with a stick, but he denied her remaining allegations.

The prosecution also presented testimony from a Michigan State Police fugitive-team trooper concerning efforts to locate and arrest Johnson after the above incidents. The trooper explained that the team generally pursues individuals wanted on violent arrest warrants and described surveillance efforts that led to Johnson's arrest in January 2019.

The trial court directed a verdict for Johnson on the torture charge and dismissed certain charges relating to Watson. With respect to the December 3 incident, the jury acquitted Johnson of assault with intent to murder but convicted him of the lesser offense of assault with intent to do great bodily harm less than murder, first-degree home invasion, and nine weapons offenses. With respect to the December 5 incident, the jury acquitted Johnson of unlawful imprisonment and

assault by strangulation but convicted him of misdemeanor aggravated domestic violence, a charge his trial counsel conceded in closing argument.

The trial court sentenced Johnson as a fourth habitual offender to the following terms of imprisonment: 25 to 50 years for assault with intent to do great bodily harm; 15 to 25 years for first-degree home invasion; 2 to 10 years for discharging a firearm in a dwelling; 2 to 5 years for being a felon in possession of a firearm; 2 to 5 years for being a felon in possession of ammunition; 2 to 5 years for carrying a concealed weapon; and 2 years for each of the five felony-firearm convictions. *See People v. Johnson*, No. 353531, 2022 WL 17169390, at *1 (Mich. Ct. App. Nov. 22, 2022). The felony-firearm charges were to run concurrently with one another but consecutively to the remaining charges, which were to run concurrently. *Id.*

Johnson filed a motion for new trial/evidentiary hearing raising the same claims raised in his present habeas petition. The trial court denied the motion. (ECF No. 16-28, PageID.1959-1969.) The trial court also denied Johnson's motion to correct his sentence, which he argued was invalid, and for resentencing. (*Id.* at PageID.1902-1908.)

The Michigan Court of Appeals affirmed Johnson's conviction and sentence. *Johnson*, 2022 WL 17169390. Johnson sought and was denied leave to appeal in the Michigan Supreme Court. *People v. Johnson*, 512 Mich. 961 (2024).

Johnson then filed a petition for a writ of habeas corpus, which raised approximately twenty-eight separate claims. (ECF No. 1.) Respondent moved to dismiss the petition for failure to exhaust state court remedies. (ECF No. 15.) In response, Johnson clarified that he intended to pursue only three claims. (ECF No. 18). He also filed a "Motion for Habeas Corpus Review" identifying the claims he intended to pursue. (ECF No. 18.) The Court denied Respondent's motion to dismiss and granted Johnson's motion for habeas corpus review, which the Court treated as an amended petition. (ECF No. 21.)

The three claims raised in the amended petition are:

> I. Declaring Michael Mack unavailable and reading his preliminary examination transcript to the jury violated the Michigan Rules of Evidence and the Confrontation Clause. Trial counsel was ineffective for failing to provide any grounds for her objections.
>
> II. The prosecutor committed error in closing argument by commenting on facts not in evidence, by stating that Mr. Mack did not testify because he was scared, which violated Mr. Johnson's due process rights to a fair trial. Trial counsel was ineffective for failing to object.
>
> III. The lay opinion testimony of a member of the Michigan State Police Trooper fugitive team denied Mr. Johnson his due process right to a fair trial because it implied he was a fugitive and violent. It was improper lay opinion testimony irrelevant to any fact at issue and more prejudicial than probative. Trial counsel was ineffective for failing to object.

(ECF No. 18, PageID.2431, 2450, 2457.)

On May 21, 2026, Respondent filed an answer in opposition. (ECF No. 22.) Johnson filed a reply brief on June 1, 2026. (ECF No. 23.)

## II. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000). An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.

AEDPA "imposes a highly deferential standard for evaluating state-court rulings," and "demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations omitted). A "state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). A "readiness to attribute error [to a state court] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Viscotti*, 537 U.S. 19, 24 (2002).

A state court's factual determinations are presumed correct on federal habeas review. *See* 28 U.S.C. § 2254(e)(1). This presumption is rebutted only with clear and convincing evidence. *Id.* Moreover, for claims adjudicated on the merits in state court, habeas review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

**III. Petitioner's Motion to Compel Discovery**

Johnson has moved for an order compelling the production of "any/all prosecutorial/detective files" regarding Watson's testimony that the home where she was attacked on December 5th was abandoned. (ECF No. 19, PageID.18.) He claims that he has learned that Watson's testimony that the home was abandoned is false. In fact, he states that his family has discovered that Joseph Havedank lived

there during the relevant time, and he asserts that the prosecutor intentionally withheld this information. He also claims that the police knew that someone stayed there. He labels this evidence exculpatory.

Habeas petitioners "[are] not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). Rule 6(a) provides that "[a] judge may, for good cause, authorize a party to conduct discovery." *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). Discovery is appropriate only when "specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is . . . entitled to relief." *Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004) (quoting *Bracy*, 520 U.S. at 908-09). Rule 6 does not permit "fishing expeditions based on a petitioner's conclusory allegations." *Id.*; *Stanford*, 266 F.3d at 460 ("We will not find that a district court erred by denying a fishing expedition masquerading as discovery.").

Johnson does not show good cause for the discovery he seeks. First, where, like here, the state court has adjudicated a habeas claim on the merits, "[federal] review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim[.]" *Cullen v. Pinholster*, 563 U.S. 170, 181-82 (2011). Johnson does not identify any basis for obtaining discovery to supplement the state

court record when all claims raised in the petition were adjudicated on the merits by the state courts.

Second, Johnson's concern with whether Havedank occupied a home that Watson testified was vacant is unrelated to any claims presently before the Court in his habeas petition. Johnson therefore has not shown that the requested files would assist him in establishing a violation of federal law on any claim before the Court.

Finally, Johson's conclusory allegation that Havedank's presence in the home would have been exculpatory because it contradicted Watson's testimony that the home was vacant does not establish good cause for discovery. Even if Johnson discovered documents showing that the house was occupied, he would not be entitled to habeas relief. Such documents would not establish that Watson was lying because she could simply have been mistaken. Nor would they establish that the prosecution intentionally withheld exculpatory information, as Johnson alleges. Watson's credibility was impeached at length based on her own admissions that she lied on numerous occasions. Thus, even if evidence that Havedank occupied the home provided some additional basis for challenging Watson's credibility, it would have been cumulative impeachment on a tangential issue and would have added little to the substantial impeachment of Watson's credibility already before the jury.

For these reasons, Johnson has not provided good cause for the Court to order the discovery he seeks.

## IV. Analysis of Petitioner's Grounds for Habeas Relief

### A. Claim One: Confrontation Clause and Ineffective Assistance of Counsel

Johnson asserts that his right to confrontation was violated when the trial court found witness Michael Mack unavailable to testify and allowed Mack's preliminary examination testimony to be read to the jury. Johnson also claims that his trial counsel was ineffective for failing to raise a proper objection. Respondent contends that the Confrontation Clause claim is procedurally defaulted and, alternatively, that the claim lacks merit. The Court is not required to address a procedural default issue before deciding against the petitioner on the merits. *Overton v. Macauley*, 822 F. App'x 341, 346 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."). Here, rather than conducting a lengthy inquiry into procedural default, judicial economy favors proceeding directly to a discussion of the merits of this claim.[1]

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront the witnesses against him or her. U.S. Const., Am.

[1] Respondent maintains that Johnson's second claim is also procedurally defaulted. In the interest of judicial economy, the Court reaches the merits of that claim as well.

VI. One of the main concerns of the Confrontation Clause is to ensure the reliability of evidence through cross examination. *Maryland v. Craig*, 497 U.S. 836, 845 (1990). The Confrontation Clause thus prohibits the admission of an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross examination. *Crawford v. Washington*, 541 U.S. 36, 55-59 (2004).

While the Sixth Circuit has noted that there is "some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes," *Al-Timimi v. Jackson*, 379 F. App'x 435, 437-438 (6th Cir. 2010) (discussing *Vasquez v. Jones*, 496 F.3d 564, 577 (6th Cir. 2007)), the Supreme Court has never held that a defendant is denied the right of confrontation when a witness is unavailable at trial and the court admits the witness's preliminary examination testimony. *Id.* at 438.

Indeed, the Supreme Court has found no Confrontation Clause violation by the admission of an unavailable witness's prior testimony when there was an opportunity for cross examination at the prior proceeding. *See Mattox v. United States*, 156 U.S. 237 (1895) (prior trial testimony); *see also Barber v. Page*, 390 U.S. 719, 725-726 (1968) ("there may be some justification for holding that the opportunity for cross-examination of a witness at a preliminary hearing satisfies the demand of the confrontation clause").

The Michigan Court of Appeals considered this issue under state and federal law on direct appeal and denied relief, essentially finding that the victim's preliminary examination testimony was properly admitted under state law and that Johnson's confrontation rights were not violated because Mack was unavailable and Johnson had an adequate opportunity to cross-examine him at the preliminary examination. The court explained:

> . . . Statements made during a preliminary examination are testimonial. *Id.* at 68. "[W]hile cross-examination before trial may not be as searching as cross-examination at trial, prior testimony is nevertheless admissible so long as the defendant was not significantly limited in his cross-examination." *United States v Mallory*, 902 F3d 584, 591 (6th Cir. 2018) (quotation marks and citation omitted) . . .
>
> MRE 801(c) defines "hearsay" as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Generally, hearsay is inadmissible at trial. *See* MRE 802. However, MRE 804(b)(1) provides that "[t]estimony given as a witness at another hearing of the same or a different proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" is admissible "if the declarant is unavailable as a witness." . . . [I]n *People v Farquharson*, 274 Mich App 268; 731 NW2d 797 (2007), this Court set forth the following three-factor test to determine whether a party had a "similar motive to develop the testimony" for the purposes of MRE 804(b)(1):
>
>> (1) whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue; (2) the nature of the two proceedings—both what is at stake and the applicable burden of proof; and (3) whether the party opposing the

> testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities). [*Id.* at 278 (quotation marks and citations omitted).]

Here, admission of Mack's preliminary examination testimony did not violate the Confrontation Clause or MRE 804(b)(1). As to the Confrontation Clause, defendant concedes on page seven of his brief on appeal that "Mr. Mack was unavailable at trial because he refused to testify and was held in contempt." The question therefore becomes whether defendant had a prior opportunity to cross-examine Mack and was not "significantly limited" in that regard. *See Mallory*, 902 F3d at 591.

The record indicates that defendant did have an opportunity to cross-examine Mack. Th[e] preliminary examination was not unduly limited in scope, and defense counsel was able to cross-examine Mack regarding his credibility and the elements of the charged offenses. For example, defense counsel was able to have Mack admit that he did not actually see the gun that was used to shoot him. As a general rule, this Court has previously concluded that preliminary examination testimony is admissible without violating the Confrontation Clause, so long as the declarant is otherwise unavailable. *See, e.g.*, *People v Garland*, 286 Mich App 1, 7; 777 NW2d 732 (2009). Federal courts have done so as well in the context of grand jury proceedings. *See, e.g.*, *United States v Shaffers*, 22 F.4th 655, 661 (7th Cir. 2022). Thus, Mack's preliminary examination testimony was presumptively admissible under the Confrontation Clause, and there is nothing particular about this case that would warrant a different conclusion.

Defendant, of course, argues otherwise, citing U.S. Supreme Court Justice Brennan's dissent in *California v Green*, 399 U.S. 149; 90 S. Ct. 1930; 26 L. Ed. 2d 489 (1970), in which Justice Brennan asserted that "the purposes of the Confrontation Clause cannot be satisfied by a face-to-face encounter at the preliminary hearing" because "the objective of the hearing is to establish the presence or absence of probable cause, not guilt or innocence proved beyond a reasonable doubt," "neither defense nor prosecution is eager before trial to disclose its case by extensive examination at the preliminary hearing," and "lost in a cold reading of the preliminary transcript is the more

subtle yet undeniable effect of counsel's rhetorical style, his pauses for emphasis and his variations in tone, as well as his personal rapport with the jurors." *Id.* at 195-197 (Brennan, J., *dissenting*) (cleaned up). However, this reasoning was rejected by the majority in the case's holding, which concluded that the Confrontation Clause was not violated by admission of the declarant's preliminary examination testimony. *Id.* at 164 (majority opinion). The majority noted, for example, that the declarant "was under oath; respondent was represented by counsel—the same counsel in fact who later represented him at the trial; respondent had every opportunity to cross-examine [the declarant] as to his statement; and the proceedings were conducted before a judicial tribunal, equipped to provide a judicial record of the hearings." *Id.* at 165. In light of the majority opinion in *Green*, as well as more recent decisions allowing admission of preliminary examination testimony under the Confrontation Clause, we reject defendant's argument that such testimony is either *per se* inadmissible or was inadmissible in this case.

With regard to MRE 804(b)(1), as noted, defendant concedes on appeal that Mack was "unavailable" at trial. The question is whether defendant had a "similar motive to develop the testimony by direct, cross, or redirect examination" under MRE 804(b)(1). To answer that question, we must consider the three *Farquharson* factors.

These factors weigh in favor of a conclusion that Mack's preliminary examination testimony was admissible. Concerning the first factor, whether the party opposing the testimony had at a prior proceeding an interest of substantially similar intensity to prove (or disprove) the same side of a substantially similar issue, defendant had a similar interest in discrediting Mack at the preliminary examination as he did at trial. If Mack's testimony was discredited at the preliminary examination, then the charges against defendant arising from that testimony would be more likely to be dismissed by the district court than if it was not discredited. *See People v Johnson*, 427 Mich 98, 104-105; 398 NW2d 219 (1986) (explaining that the purpose of a preliminary examination is to establish probable cause against the defendant). Similarly, if Mack's testimony was discredited at trial, then the jury would be more likely to find defendant not guilty of those charges. *See People v Lemmon*, 456 Mich 625, 637; 576 NW2d 129 (1998) (explaining that witness credibility is a question for the

> jury). Concerning the second factor, the nature of the two proceedings—both what is at stake and the applicable burden of proof, the two proceedings had nearly identical risks at stake. In each proceeding, defendant would be free from criminal punishment if the charges against him were not sufficiently proven. Although the applicable burdens of proof obviously were different, this fact is not dispositive, given that the "burden of proof" question is only one subpart of the entire *Farquharson* test. Concerning the third factor, whether the party opposing the testimony in fact undertook to cross-examine the witness (both the employed and available but forgone opportunities), it is undisputed that defendant did cross-examine Mack at the preliminary examination. And there is nothing in the record to suggest that the preliminary examination was unduly limited in this regard. Therefore, application of the *Farquharson* factors leads to the conclusion that defendant had a "similar motive to develop the testimony by direct, cross, or redirect examination" under MRE 804(b)(1). Mack's testimony was thus admissible under that rule of evidence.
>
> Accordingly, the admission of Mack's testimony did not violate the Confrontation Clause or MRE 804(b)(1). As a result, regardless of whether defense counsel properly objected on these grounds at trial and the issues are deemed preserved or unpreserved, the issues are meritless. Further, because defense counsel cannot be deemed ineffective for failure to raise a futile objection, *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010), defendant's accompanying ineffective-assistance claim is meritless as well.

*Johnson*, 2022 WL 17169390, at *3-4.

The state court's decision is neither contrary to Supreme Court precedent nor based on an unreasonable application of federal law or the facts. When the trial court questioned Mack under oath, he repeatedly stated that he would refuse to testify regardless of any contempt proceedings. (ECF No. 16-17, 764-66.) The Sixth Circuit Court of Appeals has held that a witness is unavailable for trial when

the witness refuses to testify. *Davis v. MacLaren*, No. 17-2153, 2018 WL 4710071, *5 (6th Cir. 2018). The record further shows that, during the preliminary examination, both parties had an opportunity to question Mack and, in fact, did so. (ECF No. 16-3.) Because Mack was unavailable to testify at trial and Johnson had a prior opportunity to cross-examine him with the same motive at the preliminary examination, his confrontation rights were not violated by the admission of Mack's preliminary examination testimony at trial. *See Al-Timimi*, 379 F. App'x at 438-440. Habeas relief is not warranted on this claim.

Johnson also asserts that trial counsel was ineffective for failing to object to the admission of the victim's preliminary examination testimony. On habeas corpus review, to prevail on an ineffective assistance of counsel claim, Petitioner must show that the state court's denial of his claim was contrary to, or an unreasonable application of, *Strickland v Washington*, 466 U.S. 668 (1984). *Strickland* established a two-prong test for claims of ineffective assistance of counsel: a habeas petitioner must show (1) that counsel's performance was deficient, and (2) that the deficient performance prejudiced the defense. *See id*. at 687. The standard for obtaining habeas corpus relief is "difficult to meet." *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Metrish v. Lancaster*, 569 U.S. 351, 358 (2013)). In the context of an ineffective assistance of counsel claim under *Strickland*, the standard is "all the more difficult" because "[t]he standards created

by *Strickland* and § 2254(d) are both highly deferential and when the two apply in tandem, review is doubly so." *Harrington*, 562 U.S. at 105 (internal citations and quotation marks omitted). "[T]he question is not whether counsel's actions were reasonable"; but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*.

Given the Michigan Court of Appeals' ruling and this Court's ruling that the underlying confrontation claim lacks merit, however, Johnson cannot establish that trial counsel was deficient for failing to object to the admission of Mack's preliminary examination testimony. As explained above, any such objection would have been meritless because the admission of Mack's preliminary examination testimony did not violate the Confrontation Clause. Counsel is not ineffective for failing to make a meritless objection or argument. *Tackett v. Trierweiler*, 956 F.3d 358, 375 (6th Cir. 2020); *see also Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2014) ("Omitting meritless arguments is neither professionally unreasonable nor prejudicial."). The Michigan Court of Appeals therefore reasonably applied *Strickland* in rejecting Johnson's ineffective assistance claim.

For these reasons, Habeas relief is not warranted on this claim.

## B. Claim Two: Prosecutorial Misconduct and Ineffective Assistance of Counsel

In his second claim, Johnson asserts that, during closing argument, the prosecutor improperly argued facts not in evidence and that defense counsel was ineffective for failing to object.

A prosecutor's misconduct violates a criminal defendant's constitutional rights if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). Prosecutorial misconduct entails much more than conduct that is "undesirable or even universally condemned." *Id.* at 181 (internal quotation omitted). To constitute a due process violation, the conduct must have been "so egregious as to render the entire trial fundamentally unfair to a degree tantamount to a due process violation." *Washington v. Hofbauer*, 228 F.3d 689, 708 (6th Cir. 2000). The *Darden* standard is "very general", and state courts are given "considerable leeway in resolving such claims on a case-by-case basis." *Mercer v. Stewart*, 171 F.4th 897, 910 (6th Cir. 2026) (citing *Parker v. Matthews*, 567 U.S. 37, 48 (2012)). A state-court decision "cannot [be] set aside . . . on a prosecutorial-misconduct claim unless a petitioner cites other Supreme Court precedent that shows the state court's determination in a particular factual context was unreasonable." *Mercer*, 171 F.4th at 910 (quoting *Trimble v. Bobby*, 804 F.3d 767, 783 (6th Cir. 2015)).

Johnson argues that the prosecutor improperly argued in closing and rebuttal that Mack did not testify at trial because he was afraid. He maintains that this argument was improper because there was no evidence to support it. The Michigan Court of Appeals held that, although there was no direct evidence that Mack did not testify at trial because he was scared, the prosecutor's argument was a reasonable inference from Mack's testimony. *Johnson*, 2022 WL 17169390 at *4. Indeed, Mack testified during the preliminary examination about the profound impact the shooting had on him. He stated that he needed therapy, had difficulty sleeping, and could not stop thinking about it. (ECF No. 16-3, PageID.344.) He believed he suffered from PTSD, and further testified that he was "a lot more cautious" after the shooting and did not leave the house very often. (*Id.*) Thus, the record provides an evidentiary basis for the prosecutor's argument that Mack was afraid. *See United States v. Betro*, 115 F.4th 429, 448 (6th Cir. 2024) (indicating that "prosecutors must be given leeway to argue reasonable inferences from the evidence") (quotation omitted). The Michigan Court of Appeals therefore reasonably concluded that the prosecutor's argument was a permissible inference from the evidence.

The Michigan Court of Appeals also denied Johnson's claim that defense counsel was ineffective for failing to object to the prosecutor's argument:

> Here, even if defense counsel was ineffective for failure to object at trial, it did not prejudice defendant. As discussed, there was evidence

> that one witness, the female victim, was afraid to testify at trial because she was "scared" of defendant. Further, Mack himself testified at the preliminary examination that he generally was afraid after the shooting. The jury likely would have inferred for itself that Mack would have similarly been afraid to testify at trial because of defendant. Thus, while the specific allegation referenced by the prosecutor—that Mack outright refused to testify at trial because he was scared of defendant—is unsupported by the record, the record fairly suggests something similar. In light of this fact, there is no reasonable probability that the failure to object would have changed the outcome of trial, particularly in light of the fact that defendant's identity as the shooter was corroborated by both Mack's and the female victim's testimony, and by their respective 911 calls, about the shooting that day.

*Johnson*, 2022 WL 17169390, at *5.

The Michigan Court of Appeals reasonably concluded that Johnson was not prejudiced by counsel's failure to object to the prosecutor's argument. Even assuming that the prosecutor improperly suggested that Mack refused to testify specifically because he was afraid of Johnson, Johnson cannot establish a reasonable probability that an objection would have changed the outcome of the trial. The evidence established that Mack experienced significant fear and anxiety after the shooting, which affected several aspects of his life. Thus, as the Michigan Court of Appeals recognized, the jury could have reasonably inferred that Mack was afraid to testify even without the prosecutor's challenged argument.

Further, the jury was instructed that the lawyers' statements and arguments were not evidence and that they should decide the case based only on the evidence presented at trial. (ECF No. 16-19, PageID.1109.) These instructions further

reduced any potential for the prosecutor's argument to improperly influence the jury. And the evidence identifying Johnson as the shooter was substantial, including Mack's and Watson's respective 911 calls. Considering this evidence, Johnson has not shown a reasonable probability that an objection to the prosecutor's argument would have changed the outcome of the trial. The state court's rejection of this claim therefore was not contrary to, or an unreasonable application of, *Strickland*.

This claim also does not warrant habeas relief.

### C. Claim Three: Lay Opinion Testimony and Ineffective Assistance of Counsel

In his third claim, Johnson argues that the trial court improperly allowed lay opinion testimony from Michigan State Police Trooper Faucette concerning suspects who evade law enforcement. He further argues that defense counsel was ineffective for failing to object.

Faucette testified that he was assigned to the fugitive team, whose responsibility it is "to arrest violent offenders with violent arrest warrants." (ECF No. 16-18, PageID.905.) In December 2018, Faucette was notified that there was a warrant for Johnson. He was unable to locate Johnson until January 23, 2019, when he and another officer arrested Johnson in Hazel Park, Michigan. The prosecutor then asked whether it was common in these types of cases for a suspect not to retain a gun that was used in a shooting. Faucette replied:

> In my experience working these types of cases subjects that we've been looking for for an extended period of time they know we are looking for them and they are not found. We don't typically find them with weapons or [] anything weapon related to, to the incident that we[']re after them for.

(*Id.* at PageID.909.)

The Michigan Court of Appeals held that the first sentence in this passage arguably violated state rules of evidence because Faucette was giving his opinion based on his specialized experience with the fugitive team. *Johnson*, 2022 WL 17169390, at *5. But the court of appeals held that the second sentence was not improper because it was a statement of fact based on cases in which Faucette had been involved and not an opinion. *Id.* Despite finding that the first sentence arguably violated state rules of evidence, the Michigan Court of Appeals denied relief because the evidence was not prejudicial:

> The sentence was given in passing and not referenced by the prosecutor during closing argument or in rebuttal. Additionally, as the trial court correctly noted in its opinion and order denying the motion for a new trial:
>
> > [T]he Court does not see how the trooper's not telling the jury that subjects for whom the team is looking over an extended period of time know the team is looking for them would have changed the verdict. To be straight here . . . it is really not a great stretch or leap for the jury to pick up on its own the notion that subjects who know that a fugitive team is looking for them could take an extended period of time for the team to find (even supposing that confirmation of same may have required the application of the trooper's specialized skill, knowledge, or experience). [Ellipses in original.]

> We agree with this reasoning. Accordingly, Faucette's testimony concerning subjects' knowledge of the fact that law enforcement is searching for them was not prejudicial for the purposes of the plain-error standard, *see Carines*, 460 Mich at 763. Nor is there a reasonable probability that it affected the outcome of trial for the purposes of the ineffective-assistance claim, *see Randolph*, 502 Mich at 9.

*Johnson*, 2022 WL 17169390, at *6.

The Michigan Court of Appeals' opinion was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent. First, Johnson's claim that Faucette's lay opinion testimony violated Michigan Rules of Evidence fails to state a claim because "it is only noncompliance with *federal* law that renders a State's criminal judgment susceptible to collateral attack in the federal courts." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (emphasis in original). Errors in the application of state law, including evidentiary rulings, generally are not cognizable on federal habeas review unless they result in a fundamentally unfair proceeding. *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).

The Michigan Court of Appeals reasonably concluded that the challenged testimony was not prejudicial because the jury could have reached the same conclusion without Faucette's testimony. The jury could reasonably infer that a person who knew that police were searching for him would take steps to avoid apprehension, including avoiding possession of the weapon used in the offense. Thus, Faucette's brief statement added little to the evidence already before the jury

and did not meaningfully strengthen the inference that Johnson was attempting to avoid apprehension. Moreover, the challenged statement was made only once and was not mentioned by the prosecutor during closing argument or rebuttal.

For these same reasons, Faucette also has not shown that counsel's failure to object prejudiced the defense. Even assuming counsel performed deficiently by failing to object, there is no reasonable probability that an objection to this single statement would have changed the result of the proceeding. The Michigan Court of Appeals therefore reasonably applied *Strickland*'s prejudice prong in rejecting this claim.

For these reasons, Petitioner's third ground also does not warrant habeas relief.

## V. Certificate of Appealability

The Court denies Johnson a certificate of appealability. To obtain a certificate of appealability, a petitioner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To make this showing, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). For the reasons stated in this opinion,

reasonable jurists would not find this Court's assessment of Johnson's claims to be debatable or wrong.

## VI. Conclusion

The Court concludes that Petitioner is not entitled to discovery. The Court further concludes that none of the grounds raised in the amended petition entitle Petitioner to the writ of habeas corpus. Lastly, the Court finds a certificate of appeal unwarranted.

Accordingly,

**IT IS ORDERED** that Petitioner's Motion to Compel Discovery (ECF No. 19) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's application for a writ of habeas corpus is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner is **DENIED** a certificate of appealability, although Petitioner may proceed *in forma pauperis* on appeal if he chooses to appeal this decision. 28 U.S.C. § 1915(a)(3).

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 22, 2026

I hereby certify that a copy of the foregoing document was mailed to counsel of record and/or pro se parties on this date, September 22, 2026, by electronic and/or U.S. First Class mail.

s/R. Thieme
Case Manager